Michael Dieni
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>SEAN TIMOTHY TURVIN,<br><br>                Defendant. | Case No. 3:06-cr-0043-JWS-JDR<br><br>MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STOP AND SEARCH OF VEHICLE |

*I.*  *Introduction*

On November 20, 2005, police stopped Mr. Turvin's vehicle.  He and co-defendant Corinna Cunningham were traveling on a cold and snowy day in the Kenai area.  It is unknown precisely why police stopped the vehicle.  Police reports allege that an Alaska State Trooper (AST) "paced" Mr. Turvin and supposedly concluded that he was going 41 m.p.h. in a 35 m.p.h. zone.  Road conditions were snowy.  The officer eventually alleged that Mr. Turvin was going "too fast for conditions."  Mr. Turvin denies both allegations.  His driving was reasonably normal.  No probable cause existed to stop him.

In any event, Mr. Turvin complied with the officer's unlawful stop of his vehicle. The officer making the stop detained the two individuals on a bitterly cold day for approximately fifteen minutes while waiting for the arrival of a second officer. It was undoubtedly known to the officer that Mr. Turvin had a history of involvement with methamphetamines. The officer, however, had absolutely no basis in fact for believing that Mr. Turvin was involved with methamphetamines on this date.

After delaying Mr. Turvin's departure, the two officers confronted Mr. Turvin with his history, and told him that they were suspicious that he might have a "rolling meth lab" in his truck. Mr. Turvin denied any such thing. Police requested the opportunity to search to see. Police then proceeded to search the vehicle.

All of the evidence that forms the basis for the present case flows from the stop and search of Mr. Turvin's vehicle.

During the search, police found a closed "sippy cup." Police opened it and found what appeared to be numerous tiny plastic wrap containers of ½ gram quantities of methamphetamines.

Police then arrested Mr. Turvin.

During the search, police also located a shotgun that police later measured and determined to have a barrel slightly less than the 18 inches required for non-registered weapons. As a result of the search of this car, police went on to search a hotel room.

II.  Law and Argument

    A.  *Mr. Turvin's rights under the Fourth Amendment were violated when he was seized during an investigatory traffic stop which was not objectively grounded*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A warrantless search is "per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The government bears the heavy burden of showing that a warrantless search was valid because it fell within one of the exceptions to the warrant requirement. *Schneckloth v. Bustmanate*, 412 U.S. 218, 222 (1973). The government must prove the existence of an exception to the Fourth Amendment warrant requirement by a preponderance of the evidence. *United States v. Vasey*, 834 F.2d 782, 785 (9th Cir. 1987). Evidence obtained in violation of the Fourth Amendment cannot be introduced at trial in federal court. *Weeks v. United States*, 232 U.S. 383 (1914). If an initial search or seizure was illegal, not only is any evidence obtained thereby inadmissible, but any evidence discovered as the result or exploitation of that primary illegality is inadmissible as well, as a "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

There is no question that stopping a moving vehicle and detaining its occupants, even temporarily and for a limited purpose, constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *United States v. Hensley*, 469 U.S. 221, 226 (1985).

The traffic stop made here was unreasonable, and was no doubt pretextual. In *Whren v. United States*, 517 U.S. 806 (1996), the Supreme Court clarified the proper test for determining whether a temporary traffic stop was a pretext for a search. The Court in *Whren* held that a traffic stop is not pretextual where there is "probable cause to believe that a violation of law has occurred." *Id.* at 809. However, "the legal justification [for the stop] must be objectively grounded." *United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999). The evaluation of whether there was probable cause at the time of a stop is an objective question. *See United States v. Roy*, 869 F.2d 1427, 1432-33 (11th Cir. 1989) (concluding that "the court still had the duty to objectively determine whether probable cause was present").

An evidentiary hearing in this case will demonstrate that the initial stop of Mr. Turvin was not based on the necessary probable cause to believe that a traffic offense had been committed. Mr. Turvin was not speeding. In any event, the officer could not effectively ascertain Mr. Turvin's speed of travel by "pacing" it, certainly to a standard of probable cause.

Because the trooper in this case violated Mr. Turvin's Fourth Amendment right to be free from unreasonable seizures, the evidence must be suppressed.

      B.    *Mr. Turvin's vehicle was searched in violation of the Fourth Amendment*

          1.    *AST had insufficient authority to search vehicle*

In *Knowles v. Iowa*, 525 U.S. 113, 118 (1998), the Court held unconstitutional an Iowa state law which authorized police officers to conduct a full search of an automobile pursuant to issuing a citation for speeding. The Court reasoned that "[a] routine traffic stop

. . . 'is analogous to a so-called *Terry* stop.'" Thus, the rational underlying the "search incident to arrest" exception–concern for officer safety and the need to preserve evidence–is much less compelling in the context of the issuance of a traffic citation." *Id.* at 116-18. The Court noted two historical rationales for an exception to the warrant at 116. The *Knowles* court found that neither exception applied to support the search of the vehicle stopped for speeding. *Id.* at 118.

The officer in this case had insufficient authority to search Mr. Turvin's vehicle. Once he advised Mr. Turvin of the basis of the stop, he should have released him. Instead, the AST held Mr. Turvin for a prolonged period of time, and then undertook to confront him about his past circumstances, and to seek the opportunity to search the vehicle.

> 2.   *Continued and extended detention was unreasonable and in violation of Fourth Amendment*

The constitutionality of an investigative detention is judged under the framework established in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968), requiring that the scope of an investigative detention "must be carefully tailored to its underlying justification . . . and [may] last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491 (1983). "An officer must initially restrict the questions he asks during a stop to those that are reasonably related to the justification for the stop." *United States v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir. 2001). Here, the extended detention and search of Mr. Turvin's vehicle after the officer could have addressed the traffic matters was in violation of the Fourth Amendment.

### C. Any alleged subsequent consent by Mr. Turvin was tainted by illegal detention

"Under the Fourth Amendment, evidence obtained subsequent to an illegal investigation is tainted by the illegality and thus inadmissible, nothwithstanding the suspect's consent, unless subsequent events have purged the taint." *United States v. Chavez-Valenzuela*, 268 F.3d 719, 727 (9th Cir. 2001); *Florida v. Royer*, 460 U.S. 491, 507-08 (1983).

> In determining whether the taint has been sufficiently purged, we ask "whether, granting establishment of the primary illegality, the evidence . . . has been come at the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." United States v. Millan, 36 F.3d 886, 89 (9th Cir. 1994) (internal quotation marks omitted). Elements to be considered in answering this question include temporal proximity between illegality and consent and the presence of intervening circumstances. These factors "go primarily to the question whether an illegally arrested or detained defendant's response to police questioning is 'sufficiently an act of free will to purge the primary taint of the unlawful invasion.'" United States v. George, 883 F.2d 1407, 1416 (9th Cir. 1989) (quoting Wong Sun, 371 U.S. at 486, 83 S. Ct. 407). We also take into account "the purpose and flagrancy of the official misconduct." Id.

268 F.3d 719 at 727-28.

Just as in *Chavez-Valenzuela*, by the time Mr. Turvin was asked for permission to search his vehicle, Mr. Turvin had been stopped and made to wait both inside and out of the truck, in the cold, by the side of the road while the officer waited for the second officer and then questioned Mr. Turvin.

D.   *Any alleged consent by Mr. Turvin to search was involuntary.*

Where the validity of a search rests on an alleged consent, the government has the burden of establishing that the necessary consent was freely and voluntarily given. *Florida v. Royer*, 460 U.S. 491, 497 (1983). This burden is not satisfied by establishing mere submission to a claim of lawful authority. *Bumper v. North Carolina*, 391 U.S. 543, 548-9 (1968); *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327-28 (9th Cir. 1997).

The question of whether a consent to search was voluntary as opposed to the product of implied coercion is determined by evaluating the totality of the circumstances surrounding the consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *United States v. Torres-Sanchez*, 83 F.3d 1123, 1129-30 (9th Cir. 1996). Knowledge that one has the right to refuse to consent is highly relevant to a determination that there has been an effective consent. *United States v. Mendenhall*, 446 U.S. 544, 558-59 (1980).

E.   *Mr. Turvin did not consent to the search of the sippy cup*

Police had accused Mr. Turvin of past involvement in methamphetamines, a "rolling lab," and wanted to search the vehicle to see if Mr. Turvin had a "rolling lab" on this occasion. Police then proceeded as if they had consent to do so. Instead of searching for large objects consistent with a methamphetamine laboratory, police searched small objects that obviously could not have been a laboratory for the manufacture of methamphetamines, including a little plastic baby's juice cup.

Consent to search is a well-established exception to the Fourth Amendment prohibition of warrantless searches. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *United States v. Enslin*, 327 F.3d 788, 792-93 (9th

Cir. 2003). The scope of a search is defined by its expressed object. *See Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991); *United States v. Gutierrez-Mederos*, 965 F.2d 800, 803 (9th Cir.1992). "[T]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. at 251, 111 S. Ct. 1801. The stated object of the search also determines which containers an officer may inspect without exceeding the scope of a consent to search. *See id.* at 249, 111 S. Ct. 1801. It is "objectively reasonable" for a police officer to believe that a consent to search a specific area authorizes the opening of "a closed container found within [the area] that might reasonably hold the object of the search." *Id.*

Here, a search for a "rolling meth lab" did not reasonably include the search of a closed tiny little plastic child's "sippy" cup.

### III. Conclusion

Based on the above arguments and authorities, all evidence in Mr. Turvin's case seized during and after the search of his vehicle must be suppressed.

///
///
///
///
///
///

DATED this 22nd day of May, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Michael D. Dieni
Assistant Federal Defender
Alaska Bar No. 8606034
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mike_dieni@fd.org

Certification:

I certify that on May 22, 2006, a copy of the foregoing document, with attachments, was served electronically on:

David A. Nesbett, Esq.

/s/ Michael D. Dieni