DEBORAH M. SMITH
Acting United States Attorney

DAVID A. NESBETT
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: david.nesbett@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr-0043-JWS |
| | ) | |
| Plaintiff, | ) | **UNITED STATES'** |
| | ) | **OPPOSITION TO** |
| vs. | ) | **DEFENDANT'S MOTION** |
| | ) | **TO SUPPRESS** |
| SEAN TURVIN and | ) | |
| CORINA CUNNINGHAM | ) | |
| | ) | |
| Defendants. | ) | |

I.    INTRODUCTION

The defendants, Sean Turvin and Corina Cunningham, move to suppress

evidence resulting from their contact with Alaska State Troopers on November 20,

2005. The troopers had probable cause to stop the defendants, and did not detain

them or search their vehicle in violation of the Fourth Amendment and, therefore, the government opposes the defendants' motions.

II.   FACTS

On November 20, 2005, at approximately 1945 hours, while stopped behind several vehicles at the intersection of the Sterling and Kenai Spur Highways, Trooper Christensen observed a white 1985 Chevy pickup truck, Alaska license plate 4184DE, turn left onto the Kenai Spur Highway.  As the vehicle accelerated from the intersection at a high rate of speed, the trooper noticed it had an excessively loud exhaust system.  The trooper followed the truck onto the Kenai Spur Highway and paced it going 41 mph in a 35 mph limit speed zone.  While Trooper Christensen was following the truck, the driver revved the engine several times causing the truck to fishtail from side to side.

At approximately 1947 hours, Trooper Christensen conducted a traffic stop of the vehicle in the parking lot of the Marydale Tesoro.  The driver was verbally identified as Sean Turvin.  Corina Cunningham was sitting in the middle of the bench seat next to Turvin.  She also was verbally identified.  Upon request, both Turvin and Cunningham exited the vehicle through the driver's side of the truck. Trooper Powell had arrived as backup and advised Trooper Christensen that Turvin had been previously contacted in reference to the possible manufacture and distribution of methamphetamine from the same white Chevy pickup truck.

At approximately 2001 hours, Turvin was interviewed at the Marydale Tesoro outside his truck. Troopers explained that they were aware of the circumstances surrounding his last contact with law enforcement, specifically as regards the "rolling meth lab", and requested to search his vehicle. Turvin consented to the search of his truck. After a pat search of his person, Turvin stood in front of his truck while the troopers search his vehicle. Cunningham was allowed to stay warm inside the Tesoro station. Turvin indicated that they would find a shotgun inside the truck that belonged to his grandfather.

Behind the bench seat, troopers located a sawed off shotgun with a barrel length measuring approximately 16.5 inches. Turvin indicated that this shotgun also belonged to his grandfather. When the trooper opened the passenger's side door, a clear and blue child's sippy cup fell from the truck onto the ground near the trooper's feet. The trooper asked Turvin to whom the sippy cup belonged and Turvin replied that it belonged to his son. Through the clear plastic top of the container, the trooper was able to identify small baggies with some type of design printed on each baggie. The trooper believed that the baggies contained a controlled substance. The trooper removed the top of the container and observed that the small baggies contained a white crystalline substance that appeared to be methamphetamine. The trooper told Turvin that the sippy cup appeared to contain methamphetamine. Turvin responded that he did not know who owned the sippy

cup. Troopers terminated the search pending application of a search warrant. Troopers field tested the contents of the sippy cup, which indicated a positive result for the presence of methamphetamine. Turvin was arrested at this time for misconduct involving a controlled substance in the third degree and misconduct involving weapons in the second and third degrees. Cunningham was arrested at this time for misconduct involving a controlled substance in the third degree.

During a search incident to arrest of Cunningham, troopers found $773 in cash in her right rear pocket and a cell phone in her sweater pocket. Among the dollar bills, troopers found an empty baggie with a printed design on it similar to the packages found in the sippy cup. Both defendants were issued citations for failing to wear their seatbelts and Turvin was issued a citation for the loud faulty exhaust system.

III.  ARGUMENT

The defendant argues that the stop, detention and search were unlawful.

A.  The Vehicle Stop Did Not Violate the Fourth Amendment

Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, an investigatory stop "is permissible under the Fourth Amendment if supported by reasonable suspicion." Ornelas v. United States, 517 U.S. 690, 693 (1996). The Fourth Amendment is not violated by a temporary seizure of a person where an officer observes unusual conduct which leads him reasonably to conclude, in light of his

experience, that "criminal activity may be afoot[.]" <u>Terry</u>, 392 U.S. at 30.  In

deciding whether Trooper Christensen had reasonable suspicion that the defendant

had committed a traffic violation, which would justify the stop of the defendant,

the court must consider the totality of the circumstances.  <u>United States v. Arvizu</u>,

534 U.S. 266, 273 (2002).  Such investigatory stops are justified by "reasonable

suspicion" that criminal activity may be afoot.  <u>Id.</u>  All relevant factors must be

considered when determining whether the officer had reasonable suspicion – even

those factors that, in a different context, might be innocuous.  <u>Id.</u> at 277-78.

In <u>Whren v. United States</u>, 517 U.S. 806 (1996), the Supreme Court

determined that an automobile stop is subject to the constitutional imperative that it

not be "unreasonable" under the circumstances.  <u>Id.</u> at 810.  The decision in <u>Whren</u>

does not require the court to determine the reasonableness of a temporary detention

if there is reasonable suspicion to conclude that a traffic violation occurred.  <u>Id.</u> at

818-819.  As a general matter, the decision to stop an automobile is reasonable

where the police have probable cause to believe that the defendant violated the

traffic code, even if the ultimate charge was not related to the traffic stop.  <u>Id.</u> at

809-809; <u>United States v. Willis</u>, 431 F.3d 709, 714-15 (9th Cir. 2005).

Here, the detention of the defendants falls within the scope of a valid traffic

stop because Trooper Christensen had at least reasonable suspicion – if not

probable cause – to stop the defendants.  The trooper observed the defendant

accelerating at a high rate of speed from an intersection, and heard an excessively loud exhaust noise. The vehicle was also speeding, traveling approximately 41 mph in a 35 mph zone. The vehicle was also being driven in an unsafe manner, fish-tailing as a result of a revved engine. Although not a prerequisite to constitutionality, the officer in fact cited the defendant for excessive exhaust noise. Finally, the Trooper Christensen, the trooper who affected the stop, did not know who the driver was and was unaware of Turvin's prior contact with law enforcement; he learned this from Trooper Powell who arrived after the stop. The investigatory stop and subsequent detention of the defendant was not a violation of the Fourth Amendment because it was based on at least reasonable suspicion, if not probable cause, that the defendant had committed a traffic violation and, therefore, was constitutional.

### B.    Continued Detention Was Reasonable

As discussed above, the initial stop based on reasonable suspicion, if not probable cause, that Turvin committed a traffic violation was proper. The continued detention was also reasonable. Unlike the prolonged detention at issue in United States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001), in which mere nervousness did not justify extended detention and questioning, in this case the driver was identified by another trooper, who arrived after the initial traffic stop, as a person who had been previously contacted by law enforcement concerning a

"rolling meth lab" and the *same* truck.  The troopers were thus aware of new

information that provided new reasonable suspicion that the defendant was

involved in criminal activity other than a simple traffic stop.  Furthermore, the

delay caused no more than the minute or two it took for the trooper to ask Turvin

for permission to search his vehicle; there was no additional questioning.  The time

of the stop was 1947 hours.  The time of the interview was 2001 hours.  The search

and subsequent arrest all occurred within 5-10 minutes of the time of the interview.

The new basis for reasonable suspicion and the brevity of the stop before the

discovery of the methamphetamine distinguish this case from <u>Chavez-Valenzuela</u>

and, therefore, the trooper's request to search Turvin's truck did not violate the

Fourth Amendment.

     C.    <u>Turvin's Consent to Search the Vehicle Was Voluntary</u>

Turvin voluntarily consented to a search of his vehicle.  An individual may

waive his Fourth Amendment rights by giving voluntary and intelligent consent to

a warrantless search of his person, property, or premises.  <u>United States v. Torres-

Sanchez</u>, 83 F.3d 1123, 1129 (9th Cir. 1996).  The validity of a person's consent is

a question of fact, and its resolution depends upon the totality of the circumstances.

<u>United States v. Morning</u>, 64 F.3d 531, 533 (9th Cir. 1995).  The court considers

the following five factors in determining whether a person has freely consented to

a search: (1) whether defendant was in custody; (2) whether the arresting officers

had their weapons drawn; (3) whether <u>Miranda</u> warnings were given; (4) whether the defendant was told he had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained. <u>Morning</u>, 64 F.3d at 533 (9th Cir. 1995).

Here, the defendant was not in custody or seized at the time he provided consent. The exchange between the troopers and Turvin was relaxed, non-confrontational, and low-key. Second, the troopers' guns were not drawn; the basis for the stop was a mere traffic violation. Third, <u>Miranda</u> warnings were not given because he was not in custody. Fourth, the first question posed to Turvin was whether he would have a problem consenting to the search of his vehicle. Turvin immediately answered in the affirmative. The troopers never explained to him that he had the right not to consent. And fifth, Turvin was not told that a search warrant could be obtained. The application of the fifth factor depends on the particular circumstances of the case and hinges on whether a suspect is informed about the possibility of a search warrant in a threatening manner. <u>See United States v. Cormier</u>, 220 F.3d 1103, 1112 (9th Cir. 2000). In this case, the trooper's failure to inform Turvin that he could obtain a search warrant supports the view that Turvin freely and voluntarily consented to the search of his vehicle.

Moreover, in Trooper Christensen's report, he mentions that the driver and owner of the vehicle "verbally" identified himself as Sean Turvin. Trooper

Christensen never was in possession or control of Turvin's driver's license and, thus, never held on to it during the contact.

Ultimately, there is nothing to suggest that the troopers exerted any overt or implicit coercion on Turvin. Under the totality of the circumstances, therefore, Turvin's consent to search his truck was valid, and the subsequent search of the truck was not a violation of the Fourth Amendment.

> D.    The Search of the Sippy Cup Was Reasonable

The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness – what would a reasonable person have understood by the exchange between the officer and the suspect. <u>Florida v. Jimeno</u>, 500 U.S. 248, 251 (1991). The scope of the search is generally defined by its expressed object. <u>Id.</u> Here, Turvin granted Trooper Christensen permission to search his truck and did not place any explicit limitation on the scope of the search. Trooper Christensen had informed Turvin that he was aware that Turvin had previously been contacted by law enforcement concerning the possession and manufacture of methamphetamine and asked whether Turvin would have any problem with a search of his vehicle. It is implicit in Trooper Christensen's request that he would be looking for box a box lab and manufacturing paraphernalia *and* controlled substances in the truck. It was objectively reasonable for the troopers to conclude that the general consent to

search Turvin's truck included consent to search containers within that truck which might bear controlled substances. A reasonable person would be expected to know that controlled substances are generally carried in a container and not "strewn across the trunk or floor of a car." Id. (quoting United States v. Ross, 456 U.S. 798, 820 (1982)). As in Jimeno, the authorization to search extended beyond the surfaces of the truck's interior to the sippy cup that fell from the passenger's side of the truck. The search of the sippy cup was, therefore, reasonable.

IV.    CONCLUSION

Based on the foregoing, the stop of Turvin's vehicle, the temporary detention, and the subsequent search of the vehicle did not violate the Fourth Amendment. The evidence, therefore, should not be suppressed.

RESPECTFULLY SUBMITTED this 30th day of May, 2006, in Anchorage, Alaska.

> DEBORAH M. SMITH
> Acting United States Attorney
>
>  s/ David A. Nesbett
> Special Assistant U.S. Attorney
> Federal Building & U.S. Courthouse
> 222 West Seventh Avenue, Rm 253
> Anchorage, Alaska 99513-7567
> Phone: (907) 271-6306
> Fax: (907) 271-1500
> E-mail: david.nesbett@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30th, 2006,
a copy of the foregoing  was served
electronically on Michael Dieni
& Lance Wells.


s/ David A. Nesbett
Special Assistant U.S. Attorney