**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br>vs.<br><br>SEAN T. TURVIN and CORINA CUNNINGHAM,<br><br>        Defendants. | 3-06-cr-00043-JWS-JDR<br><br>**RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS**<br><br>(Docket Entries 23 & 26) |

       Defendant Sean T. Turvin moves to suppress all evidence seized as a result of a police stop and search of his vehicle. Docket entry 23. The motion is joined by co-defendant, Corina Cunningham. Docket entry 26. The United States filed an opposition to the motion to suppress. Docket entry 30. On June 19, 2006, an evidentiary hearing was conducted on the motion. The court heard testimony

from two Alaska State Troopers, Darrel Christensen and Timothy Powell. Upon due consideration of the evidence adduced and the arguments of counsel, the magistrate judge recommends that the court adopt findings of fact and conclusions of law as stated below, and that the motion to suppress be granted.

## Findings of Fact

On November 20, 2005, Alaska State Trooper Darrel Christensen was on duty in a marked police vehicle in the vicinity of Soldotna, Alaska. While stopped at the intersection of the Sterling and Kenai Spur highways, Trooper Christensen observed a white 1985 Chevy pickup, Alaska license 4184 DE, turn left onto the Kenai Spur Highway. His attention was diverted to the pickup because of its loud exhaust and rapid acceleration.[1] He observed the rear tires breaking loose and moving to one side as the truck sped away. Turvin would rev his engine each time the rear wheels of his vehicle lost traction. It appeared to the officer that the driver was intentionally causing the rear of the vehicle to fish-tail, although the driver appeared to maintain control of the vehicle.

There was a light snowfall on the ground at the time. Trooper Christensen accelerated and caught up to the pickup and began to pace it while remaining about 150 feet behind. Trooper Christensen used an Eagle brand radar

---

[1] State law requires that a muffler sound not be louder than the factory installed muffler.

unit mounted in his police vehicle to supplement his assessment of the speed of the truck. The posted speed limit in the vicinity was 35 mph, and the trooper estimated that the truck was traveling about 41 mph. After following the pickup for 1 to 1 ½ minutes, Trooper Christensen activated his police lights to effect a traffic stop of the truck.

The driver of the truck, later identified as Sean Turvin, pulled over at a Tesoro gas station. Trooper Christensen had not had any prior contact with Mr. Turvin. Seated to Turvin's right was Corina Cunningham. Prior to the traffic stop, Trooper Christensen had no information about either defendant's involvement in illicit drugs. The trooper observed that neither of the individuals in the vehicle appeared to be wearing seat belts. The trooper asked these individuals for their identification which they provided verbally. Using the names provided, the trooper had police dispatch run them for any outstanding arrest warrants and the status of Turvin's driver's license. Dispatch informed Trooper Christensen that Turvin's driver's license was current and valid.

While Trooper Christensen was writing a citation for Turvin, Trooper Powell arrived at the scene. The traffic stop had occurred about ten minutes earlier. Trooper Powell responded to the scene of the traffic stop because he heard on the police radio that one of the occupants of the vehicle was Sean Turvin, whom he knew had earlier been found to have a rolling meth lab in his vehicle. At the Tesoro

station, Trooper Powell recognized the Chevy pickup, as well as Sean Turvin. Trooper Powell informed Trooper Christensen that earlier in 2005 Turvin's vehicle had failed to yield and when stopped, was found to contain a rolling meth lab. Trooper Powell stood by as a backup officer while Trooper Christensen completed the traffic stop.

Trooper Christensen told Turvin that he knew that he had had a prior meth lab in his car, and Turvin acknowledged as much. Trooper Christensen decided to ask Turvin for consent to search his vehicle. Trooper Christensen asked Turvin if he would mind if he searched his vehicle. The purpose of seeking the consent to search was to look for contraband. Without equivocation, Turvin indicated that Christensen could look in the vehicle. The conversation was calm and relaxed. No one was under arrest at the time.

Both troopers tape recorded portions of the events surrounding the traffic stop. The search inquiry was not recorded on Trooper Christensen's audio recorder, but it can be heard on Trooper Powell's recorder. Trooper Christensen turned his recorder off when he returned to his vehicle and while he made phone calls to dispatch and the district attorney. The real time reflected in the dispatch log is slightly different from the time reflected in the police vehicle recordings, since dispatch and police recorders were not synchronized.

Trooper Christensen did not issue a traffic ticket to Turvin for speeding. When he approached the pickup, Trooper Christensen noticed that the vehicle had an expired registration. The trooper did not write a ticket for that violation.

After obtaining Turvin's consent to search the vehicle, Trooper Christensen approached the truck and remarked that it looked like the box behind the seat could contain a rolling meth lab. Turvin responded that it was a speaker box. Trooper Christensen observed a sawed-off shotgun on top of the box. Trooper Christensen could not tell by his visual observation whether the gun barrel exceeded 18" as required by law. The shotgun stock had been cut off past the grip. He placed the shotgun in the police vehicle and continued his search of the truck.

Trooper Christensen unlocked the passenger door from inside the truck. He then walked around to the passenger door. As he opened the passenger door, a child's blue sippy cup fell to the ground. He picked up the cup and could see through the clear glass bottom that it contained a paper product. In the troopers' assessment, the cup appeared to be a "drug nexus" for packaging drugs. Turvin said words to the effect that the cup was too small for a meth lab. Christensen told Turvin that he was being detained.

Trooper Christensen asked Turvin to whom the cup belonged. Turvin first said it was his son's, but when asked about the contents said he didn't know. Turvin was placed in handcuffs. Christensen then field-tested the crystal-like

substance inside the cup which produced a positive reaction for methamphetamine. Turvin was arrested after the officer observed the baggie in the sippy cup containing suspected contraband. Prior to the consent, the troopers had seen nothing in the truck to indicate there might be methamphetamine in the vehicle or that Turvin was involved in methamphetamine on November 20, 2005.

Two citations were issued to Turvin. One for not wearing a seatbelt, and one for a loud exhaust. Turvin was not free to leave when Trooper Christensen asked for his consent to search his vehicle. Trooper Christensen asked Trooper Powell to issue a citation for Cunningham for not wearing a seatbelt. Cunningham was subsequently arrested for a drug offense based on her proximity to the contraband found in the sippy cup.

A wrecker was called to remove the pickup which was then secured in police custody. Turvin and Cunningham were transported to the local jail. A search incident to arrest revealed that Cunningham was carrying $773 in cash. At the police station, further examination of the cash disclosed a Ziplock bag with suspected crystal meth mixed in with the cash. The shotgun barrel was later measured to be 16 ½".

## Discussion

Turvin challenges the legality of the traffic stop and argues that the police had no reasonable suspicion for the prolonged detention. He claims that the

police needed an independent basis for reasonable suspicion to search the vehicle before inquiring about a consent search. He argues that the police relied upon an involuntary consent to search, and the evidence obtained as a result of the search of the truck should be suppressed. Cunningham seeks suppression of the items removed from her person and argues that her continued detention was unreasonable. The government responds that the traffic stop was legal and not a pretext to search for drugs. The government argues that Turvin provided the police with a lawful consent to search the vehicle and that the detention of the defendants prior to their arrest was lawful.

### The Vehicle Stop

An automobile stop is subject to the constitutional limitation that it not be unreasonable under the circumstances. Whren v. United States, 517 U.S. 806, 810 (1996). When the police have probable cause to believe that a traffic violation has occurred, as a general matter, the decision to stop the vehicle is reasonable. *Id.* Officer Christensen had probable cause to stop the Chevy pickup based upon its loud muffler and intentional spinning of the back wheels in a "fish-tail" manner while quickly accelerating from an intersection. The officer also had probable cause to believe that the vehicle was speeding in a 35 mph zone. Based upon the totality of the circumstances, Trooper Christensen proceeded with reasonable expedition to issue citations to Turvin after awaiting the usual response from dispatch about any

outstanding arrest warrants and confirmation of the validity of Turvin's driver's license.

### Extended Detention

The defendants cite <u>United States v. Chavez-Valenzuela</u>, 268 F.3d 719 (9th Cir. 2001), *as amended*, 279 F.3d 1062 (9th Cir. 2002), in support of their argument that the police had insufficient grounds to prolong their detention after the license and warrant checks came back negative. In <u>Chavez-Valenzuela</u>, the court ruled that the police lacked the requisite reasonable suspicion to continue to detain Chavez-Valenzuela after completing a traffic stop and to ask him if he was carrying drugs. The court observed that the constitutionality of an investigative detention is judged under the framework established in <u>Terry v. Ohio</u>, 392 U.S. 1, 19-20 (1968), which requires that the scope of an investigative detention be carefully tailored to its underlying justification and last no longer than is necessary to effectuate the purpose of the stop. *Id.* at 724. The Ninth Circuit held that an officer must initially restrict his questions to those that are reasonably related to the justification for the stop. *Id.* The court explained that the officer may expand the scope of his inquiry only if he notices particularized, objective factors arousing his suspicion. An unparticularized suspicion or hunch cannot withstand scrutiny under the Fourth Amendment. *Id. citing*, <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989).

In <u>Chavez-Valenzuela</u>, the police questioned the driver, Chavez-Valenzuela, about his travel plans and occupation after he exhibited extreme shaking and avoided eye contact with the police. There were no incriminating responses by the driver, and Chavez-Valenzuela consented to the search but responded "no" when asked by the officer if he had any drugs in his vehicle. The court of appeals ruled that the nervousness alone did not justify extending the detention and questioning of the driver about matters not related to the stop. The government argues that <u>Chavez-Valenzuela</u> is notably distinguishable from the instant case. I disagree. In <u>Chavez-Valenzuela</u>, the driver was subjected to "probing questions" while waiting for results of the records check before his permission to search was requested. Here, Trooper Christensen relied upon information about a recent rolling meth lab incident involving Turvin and sought Turvin's consent to search his vehicle only based upon that prior incident. I determine that Turvin was subjected to an illegal investigation as in <u>Chavez-Valenzuela</u>. This tainted the legality of his consent to search. The consent was solicited not as a result of information that Turvin actually possessed drugs, or a meth lab, but as a consequence of the officer's speculation that Turvin might be carrying a rolling meth lab.

In <u>Chavez-Valenzuela</u>, the court held that "subsequent immediate questioning about contraband during a traffic stop was an improper escalation beyond the traffic stop." <u>United States v. Romero-Pineda</u>, 158 Fed.App. 9 (9th Cir.

2005), *citing* Chavez-Valenzuela, 268 F.3d at 728. In Chavez-Valenzuela, the defendant had been given back his license and registration, but he had not been told he was free to leave. 268 F.3d at 724. The Ninth Circuit held that a reasonable person in Chavez-Valenzuela's position would not have felt free to leave, and thus his consent to search the car was tainted and invalid. During the lawful traffic stop, Trooper Christensen conducted an investigation into suspected drug activities beyond the scope of the traffic stop during the time that Turvin was not free to leave, nor had he been told he was free to leave.

    The government argues that Trooper Christensen was justified in extending the detention of Turvin based on the new information he had received from Trooper Powell. According to the government, Powell's information should at least have allowed the police to inquire beyond the scope of the traffic stop. Trooper Powell's information was limited to Turvin's prior criminal history involving drugs. Such history is a factor to consider in determining reasonable suspicion, but by itself is insufficient to constitute articulable suspicion. United States v. White, 2006 WL 1360165 (10th Cir. May 17, 2006) p. 6. *See also*, United States v. Sandoval, 29 F.3d 537, 542 (10th Cir. 1994). Even though an individual may have prior criminal convictions, he retains his Fourth Amendment rights. I conclude that the government has not sufficiently distinguished the holding of Chavez-Valenzuela limiting escalation beyond the scope of a traffic stop in the absence of articulable suspicion for doing so.

3-06-cr-00043-JWS-JDR TURVIN @23-26 Mtn to Suppress.wpd  10

3-06-cr-00043-JWS-JDR  RR @23,26 RE Motion to Suppress
Signed by Judge John D. Roberts  06/27/2006; Page 10 of 13

Neither trooper had any information to arouse suspicion that Turvin and/or Cunningham were then engaged in conduct involving illicit drugs.[2]

The instant case is unlike United States v. Villa-Gonzales, 32 Fed.App. 201 (9th Cir. 2002) (non-published) wherein the police had determined that the driver and occupants had driven from Minnesota to California to stay for only one hour. Such a short turn-around after a long trip was suspicious and justified the continued detention of the vehicle and occupants. The instant case is also unlike United States v. Romero-Pineda, 158 Fed.App. 9 (9th Cir. 2005) (not-published in the Federal Reporter) wherein Chavez-Valenzuela was distinguished because Romero-Pineda had been told twice that he was free to leave.

Because the court finds that the troopers exceeded the scope of the traffic stop in violation of the defendants' Fourth Amendment rights as applied by the Ninth Circuit in Chavez-Valenzuela, this court need not address Turvin's argument about the duration of the defendants' detention vis-a-vis a Fourth Amendment analysis. In Romero-Pineda, the court noted that the duration of the initial stop was five minutes and was reasonable. Because the detention and questioning of Turvin exceeded the proper scope of the initial stop, the court need not address the

---

[2] The troopers' observation of the so-called speaker box and the presence of a short shotgun were not observed until after the consent to search was solicited. Therefore, these observations cannot be considered in the assessment of the totality of the circumstances to find articulable suspicion.

voluntariness of Turvin's consent to search the pickup pursuant to the factors set forth in United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir. 1989).

Pursuant to Chavez-Valenzuela, the questioning about drugs, including the solicitation of a consent to search, violated Turvin's Fourth Amendment rights, and the taint of such violation overrides any subsequent voluntary consent to search of his vehicle.  Because the evidence of illicit drug conduct pertaining to Cunningham was obtained through her illegal detention and an illegal consent unrelated to the traffic stop, that evidence should likewise be suppressed.  Wong Sun v. United States, 371 U.S. 471 (1963), (evidence discovered as the result of exploitation of a primary illegality is inadmissible as a "fruit of the poisonous tree").  The government has not offered a satisfactory argument to overcome the application of Chavez-Valenzuela.  Accordingly, the district court should grant Turvin's motion to suppress. IT IS SO RECOMMENDED.

DATED this 27th day of June, 2006 at Anchorage, Alaska.

    /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Friday, July 7, 2006**, to object to a magistrate judge's findings of

fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **NOON, Wednesday, July 12, 2006**.  The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

       Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).