Michael Dieni
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>SEAN TIMOTHY TURVIN,<br><br>            Defendant. | Case No. 3:06-cr-0043-JWS-JDR<br><br>DEFENDANT TURVIN'S RESPONSE TO OBJECTIONS TO RECOMMENDATION REGARDING MOTION TO SUPPRESS |

       The government's objection to the recommendation regarding motion to suppress fails to raise new issues, incorrectly summarizes the law, and misrepresents the facts.[1] In summary, and most importantly, the government fails to distinguish the present case from the Ninth Circuit's holding in *United States v. Chavez-Valenzuela*, 268 F.3d 719 (9th Cir. 2001).

---

[1] It is notable that the government fails to cite to the transcript of the record from the evidentiary hearing. It appears the government failed to review the evidentiary hearing record when the government prepared its objections. In the brief that follows, where important, citation to the transcript of the evidentiary hearing (Tr.) will provide quick reference to the actual record.

The holding in that case is that the police may not prolong a lawful detention on grounds for which they do not have reasonable suspicion. The facts of *Chavez-Valenzuela* are identical in relevant detail to the present case. As in the present case, the police detoured from writing a simple traffic ticket in order to attempt to search for drugs. They did so without reasonable suspicion. The detour that occurred here was inherently unreasonable and therefore a violation of the Fourth Amendment. The questioning and alleged consent to search was tainted by the illegality and evidence seized from the search that followed must be suppressed.

> I. *No Reasonable Suspicion Existed to Prolong or Extend the Detention*

The speaker box in the back of the cab of the truck is a non-issue. It is unclear from the record whether Trooper Christiansen observed it before or after he asked Mr. Turvin about drugs and to search the truck. At the suppression hearing, counsel for the government took the position that Trooper Christiansen did not see the box until after he asked to search the truck. Tr. 151-52. Now, in its objection to the RR, the government argues that it occurred before. Either way, the record is clear that Trooper Christiansen had no reason to believe that the speaker box contained drug contraband.

Whether the officer observed the speaker box before or after requesting consent is irrelevant, because the officer and the government repeatedly took the position during the suppression hearing that there was nothing suspicious about the speaker box. In describing the initial contact with the occupants of the truck at the time of the initial stop, the officer was asked if he saw anything in the vehicle that would have indicated a methamphetamine lab, and the officer agreed that he did not. Tr. 43. When asked what

the basis for undertaking a search of the vehicle had been, the officer stated unequivocally that he relied solely upon Trooper Powell arriving and telling him that Mr. Turvin previously had been arrested for possession of a methamphetamine "rolling meth lab." Tr. 53. Finally, Trooper Christiansen admitted in testimony that there was nothing about the speaker box that raised a suspicion that Mr. Turvin had methamphetamines in his truck. Tr. 102-03. Trooper Powell in his testimony concurred that the only information he had at the time of his contact with Trooper Christiansen possibly suggesting that Mr. Turvin might be involved in methamphetamines on November 20, the day of the stop in question, was the fact that there had been a prior stop. Tr. 126. It is also notable that, in its argument to the court at the end of the suppression hearing, the government specifically stated that "the only reason that he [Christiansen] continued the extension of time, or the detention was extended was because of new information . . . [associating Mr. Turvin] with a prior incident involving a rolling meth lab." Tr. 146-47.

Nothing cited in the government's brief supports a proposition that a prior police contact, standing alone, is "reasonable suspicion" to justify a *Terry* stop. This court's original finding on this issue should stand as put.

> II.   *The Investigation into the Possible Presence of Contraband Inherently Prolonged the Duration of the Stop*[2]

The basic sequence of events supports the inference that it was Trooper Powell's intervention with the information of the prior police contact that prolonged the detention. Trooper Christiansen stopped Mr. Turvin and Ms. Cunningham in their truck at the Marydale Tesoro Station. He had something like a three or four minute contact with them, during which he looked inside the truck and got the basic information he needed to do his computer check. He saw nothing suspicious in the truck. He did the computer check and was advised by dispatch that there were no warrants and that Mr. Turvin's driver's license was current. During the course of doing the radio dispatch of this information, Trooper Powell overheard the fact that Sean Turvin was one of the persons being stopped. Trooper Powell responded to the scene while Trooper Christiansen was writing out a ticket for a loud muffler.

Trooper Christiansen testified unequivocally that if Powell had not shown up and described Mr. Turvin's prior police stop involved a methamphetamines lab, Mr. Turvin would have received the ticket and been free to go. Tr. 43. Instead, as is repeatedly conceded by the government, Trooper Christiansen and Trooper Powell "extended" or prolonged the duration of the stop by detouring from the process of writing the ticket to

---

[2] The government attempts to distinguish *Chavez-Valenzuela* by taking the position that "there was not an extended detention at all." Government's Objections to RR at 6. However, the heading of the argument section on page 3 of the government's objections states as follows: "*Trooper Christiansen possessed reasonable suspension to extend detention.*" Clearly, the government speaks with a forked tongue. Either the detention was extended or it was not. If it was, then the question is whether there was reasonable suspicion to do so. The simple answer to both of these questions is that there was not reasonable suspicion and the detention was extended.

4

attempting to conduct a methamphetamine search. Plaintiff's Objection to RR at 3, Tr. 147 (the government acknowledges "the imposition of an extended period of time . . .").

Prolongation of the stop for reasons that are not supported by reasonable suspicion are *per se* unreasonable. To avoid this clear-cut law, the government mis-cites *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). In that case, the Court considered the question of whether the use of a dog to search the exterior of a vehicle *during the course of a lawful traffic stop* was a violation of the Fourth Amendment. Clearly, the Court found that it was not. In *Caballes* the Court noted that the occupants of the vehicle were lawfully stopped and that the dog search, during what amounted to only a ten minute stop, occurred while the officer was writing the tickets. In other words, one officer was writing a ticket while another officer was walking around the vehicle with a dog. There is no evidence from the record in *Illinois v. Caballes* that the officer writing the ticket deviated or detoured from the task of writing the tickets in order to accommodate the dog sniff. By contrast, here, there is no doubt that Trooper Christiansen prolonged the detention by deviating from simply giving a ticket in order to accommodate a search of the vehicle for methamphetamines. It is unclear from the record whether Trooper Christiansen had completed writing the tickets at the time Trooper Powell arrived. The record simply does not show one way or another. One thing, however, is perfectly clear, and that is that when Trooper Powell advised Trooper Christiansen of the prior police contact involving a rolling meth lab, Trooper Christiansen stopped the ticket issuing process and went back to

Mr. Turvin's vehicle with the tape recorders rolling solely for the purpose of trying to get a search of the vehicle accomplished.[3]

In this context, the government's statement in its objections to the RR at page 5 that "Trooper Christiansen returned to issue the citation at 2001 hours" is absolutely false. The government's brief fails to cite to the record and, in fact, there is nothing in the record that supports that statement. Trooper Christiansen stated very clearly in his testimony that the purpose for approaching the vehicle with Trooper Powell after Trooper Powell arrived was to contact Mr. Turvin and try to get consent to search the vehicle. Tr. 9. There is nothing anywhere in the testimony that the second contact with Trooper Powell and Trooper Christiansen and Mr. Turvin was for the purpose of issuing citations.

The government also misrepresents the facts of *Chavez-Valenzuela* in an effort to distinguish the case. Contrary to the suggestion of the government, the questioning of Chavez-Valenzuela actually occurred during a time the officer had a legitimate reason to stop Mr. Chavez-Valenzuela. No extensive questioning of Mr. Chavez-Valenzuela occurred after the records check was complete. In fact, the decision is identical to Mr. Turvin's scenario where it states clearly that the only thing that occurred after the record check was completed was the officer asked Mr. Chavez-Valenzuela if he had drugs in the car and when Mr. Chavez-Valenzuela said no, the officer asked for consent to search and got it. Mr. Turvin's case has identical facts. The officer did the records check, found out there was no reason to hold Mr. Turvin, and instead of simply issuing the ticket

---

[3] The officer inherently admitted as much when he acknowledged that there was no need to do a tape recording for "traffic stop activities." Tr. 25. Clearly, the officer turned the tape on because he was no longer engaged in traffic stop related activities, he was doing a methamphetamines investigation.

and letting him go, the officers approached and began inquiring as to whether Mr. Turvin had drugs in the car and for permission to search.

Mr. Turvin's alleged consent, therefore, is inherently tainted by the primary illegality of the unlawful extension of the stop to include a methamphetamine investigation.

### III. Castillo and It's Progeny Do Not Apply to a Fourth Amendment Violation

In the RR, this court concludes that the *Castillo* analysis is not applicable to the present scenario because there was no primary search illegality in the *Castillo* case. *United States v. Castillo*, 866 F.2d 1071 (9th Cir. 1988). Nevertheless, the government raises *Castillo* again. The law is solidly against the government's position.

The case of *Chavez-Valenzuela as amended at* 279 F.3d 1062 (9th Cir. 2002), unequivocally states that a review of the *Castillo* factors would have been relevant *only if* the search related questioning had "not exceeded the scope of the initial stop." *United States v. Chavez-Valenzuela*, 268 F.3d 719 (9th Cir. 2001), *as amended at* 279 F.3d 1062 (9th Cir. 2002).

The taint analysis, therefore, as already found in this court's RR, is the correct approach to a post-illegality allegation of consent. *United States v. Chavez-Valenzuela*, 268 F.3d 719, 727 (9th Cir. 2001) (a detention that lacks reasonable suspicion ceases to support a conclusion that the contact is voluntary; "evidence obtained subsequent to an illegal investigation is tainted by the illegality and thus inadmissable, notwithstanding the suspect's consent, unless subsequent events have purged the taint."); *see also United States v. Colin*, 314 F.3d 439, 446-47 (9th Cir. 2002) (taint of illegal stop not purged when consent occurs during illegal stop).

The taint issue was easily decided in *Chavez-Valenzuela* and it is the same here. Temporal proximity between the violation and the alleged consent is identical. There are no intervening circumstances. And, the officer's actions of intentionally delaying the issuing of the ticket to conduct an investigation irrelevant to the legal basis for the stop was purposeful.

The government's reliance upon *United States v. White*, 2006 WL 1360165, D. Ct. May 17, 2006, is misplaced.[4] The opinion itself never reaches the prolonged detention or consent issue because the court finds, on facts very different than Mr. Turvin's case, that the officer had reasonable suspicion based on the officer's observations to prolong the questioning.

Likewise, the government's citation to *Ohio v. Robinette* is irrelevant.[5] In *Robinette*, the traffic stop was, in fact, over and the motorist was, in fact, free to go at the time the officer began asking questions about drugs. Although he was not specifically told so, Mr. Robinette was free to go. By contrast, in Mr. Turvin's case, the traffic stop was not over. Mr. Turvin was not free to go at the time Troopers Christiansen and Powell confronted him about drugs. The stop would have been over if Trooper Powell had not caused Trooper Christiansen to deviate from the lawful purposes of the stop. Unlike *Robinette*, therefore, Mr. Turvin was a captive audience for the Troopers' suspicion-less secondary drug investigation.

---

[4] It should be noted that *White* is not a Tenth Circuit decision. It is an "educational use only" publication of a district court judge's opinion.

[5] *Ohio v. Robinette*, 519 U.S. 33, 117 S. Ct. 417 (1996).

### IV. Conclusion

Trooper Christiansen, when contacted by Trooper Powell, launched a drug investigation for which no reasonable suspicion existed. He did so by taking advantage of the traffic stop. Under those circumstances the drug investigation is tainted by the illegality. Suppression of evidence from the drug investigation is required.

DATED this 12th day of July, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Michael D. Dieni
Assistant Federal Defender
Alaska Bar No. 8606034
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mike_dieni@fd.org

Certification:

I certify that on July 12, 2006, a copy of the foregoing document, with attachments, was served electronically on:

David A. Nesbett, Esq.

/s/ Michael D. Dieni