NELSON P. COHEN
United States Attorney

KELLY CAVANAUGH
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: kelly.cavanaugh@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | Case No. 3:06-cr-043-JWS |
|---|---|---|
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S TRIAL |
| vs. | ) | MEMORANDUM AND MOTIONS IN |
| | ) | LIMINE |
| SEAN T. TURVIN and | ) | |
| CORINA CUNNINGHAM, | ) | |
| Defendants. | ) | |

## I.  INTRODUCTION

The defendants are each charged with one count of conspiracy to possession of methamphetamine with intent to distribute, one count of possession with intent to distribute methamphetamine, and defendant Sean Turvin is charged with one count of possession of a prohibited firearm. The government's case should take no longer than three days.

## II.   STATEMENT OF THE CASE

### A.  Case Summary

On November 20, 2005, Alaska State Troopers (AST) stationed on the Kenai Peninsula, initiated a traffic stop on a white Chevrolet truck with license plate #4184DE. The driver of the truck was the defendant Sean Turvin, the passenger was defendant Corina Cunningham.  Turvin consented to a search of the truck.  He informed AST that there was a firearm in the truck that his grandfather had given him.  When AST began a search of the vehicle they found a shotgun with a 16.5 inch barrel.  When AST opened the passenger door, a child's sippy cup fell out of the pocket of the passenger side door. Turvin informed officers the sippy cup belonged to his son.  Inside the sippy cup, AST observed several baggies that contained white powder.  It was later determined that there were 79 individual baggies in the sippy cup weighing approximately .66 grams each. They had a collective weight of 38.8 grams and were determined by the DEA Crime Lab to contain methamphetamine hydrochloride with a 75% purity.  Cunningham was searched and AST found $773.00 in her back pocket and a cellular telephone.  Wrapped in the money found on Cunningham was a baggie with the same character found on several of the baggies in the sippy cup and contained some trace white powder.

Also found in the vehicle was a receipt for Hooligan's Lodge.  AST searched the room at Hooligan's where the manager informed AST that Cunningham and Turvin had

been staying in. Cunningham had given the manager explicit instructions not to have anyone enter the room and to leave fresh towels and linens outside the door of the room. In the room a baggie with a panther painted on the side was found, this baggie matches several of the baggies found in the truck containing methamphetamine. A bank receipt for $1200 was found. A receipt from a recent handgun purchase by Sean Turvin was found. A portion of a brass pipe with residue in the bottom, a propane lighter, a book of matches, and a propane torch container were also found.

Marie Turvin, Turvin's mother was aware of the guns given to Turvin by his grandfather. All the guns had full barrels and stocks. When shown a picture of the gun found in the truck, she did not recognize it as one of the guns Turvin had recieved.

While in custody, Turvin and Cunningham had several phone conversations that were recorded, during these conversations, Turvin and Cunningham discuss their distribution enterprise. Cunningham tells Turvin of money she is making and different distribution activities.

### B. Summary of the Charges

Defendants Turvin and Cunningham are both charged with one count each of violating 21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(1)(B)(viii), conspiracy to possess methamphetamine with intent to distribute and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii), possession of methamphetamine with intent to distribute. Defendant

Turvin is charged with a violation of 26 U.S.C. §§ 5841, 5845(a)(1), 5861(d) and 5871, possession of a prohibited firearm.

### C. <u>Witnesses</u>

At trial, the government will call some or all of the following:

1. One or more of the law enforcement officers who were involved in the investigation of this case or who were involved in the two controlled purchases, or the search of the Defendant's residence;

2. A chemist/laboratory technician employed by the DEA to testify about the nature and weight of the substances found packaged in the Defendant's residence;

3. A weapons expert employed by the ATF Laboratory to testify that the shotgun found in the Defendant's vehicle was a shotgun having a barrel under 18 inches in length, which much be registered in the National Firearms Registration and Transfer Record.

4. Chain of custody witnesses;

5. An ATF Agent to provide expert testimony that the weapons found in the Defendant's residence were shipped or transported from one state to another, or from a foreign nation to the U.S.

6. The manager of Hooligan's Lodge.

7. Turvin's mother.

8. A DEA Task Force Officer will testify regarding whether the evidence found in

the vehicle is consistent with narcotics distribution.

### D. Exhibits

The government will offer some or all of the following exhibits at trial:

1. The methamphetamine seized from the vehicle;

2. The money found in Cunningham's possession;

3. The baggie found in Cunningham's possession;

4. The items seized in the hotel room registered to the defendants;

5. Recorded conversations between the Defendants recorded while Turvin was in custody;

6. Photographs of the evidence and vehicle;

7. Photographs of the hotel room;

8. The report produced by the DEA.

9. The firearm.

## III. LEGAL/EVIDENTIARY ISSUES

### A. Expert Witness Testimony

#### General Standards

Expert opinions are admissible if they will assist the trier of fact to understand the evidence or determine a fact in evidence. Rule 702, Fed. R. Evid. Expert opinions, as opposed to testimony by summary witnesses, may be based on facts or data not

admissible into evidence.  Rule 703, Fed. R. Evid.

The court has broad discretion to determine whether to admit expert testimony. United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987); United States v. Binder, 769 F.2d 595, 601 (9th Cir. 1985).

The government has given written notice to the defendant of its intention to elicit expert opinion testimony from a Chemist from the DEA Laboratory to identify the substances found in the Defendant's vehicle and ATF agents to testify that the weapon is not registered, and the Defendant has no firearms registered in the National Firearms Registration and Transfer Record, as well as that the weapons found in the Defendant's residence were shipped or transported from one state to another, or from a foreign nation to the U.S.

### B. Limits of Relevant Defenses

Rule 403, Fed. R. Evid., provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  See also, United States v. Brannon, 616 F.2d 413, (9th Cir. 1980), cert. denied, 447 U.S. 908.  The trial court has broad discretion in determining admissibility under Rule 403.  United States v. Moore, 552 F.2d 1068, 1079 (9th Cir. 1975), cert. denied, 423 U.S. 1049 (1976).

An area of common exclusion involves attempts to confuse the issues or mislead the jury by introducing evidence of matters that do not establish a defense to the charged crimes. See, United States v. Tidwell, 559 F.2d 262, 266-7 (5th Cir. 1977), cert. denied, 435 U.S. 942 [excluding evidence that defendant's manipulation of bank funds was beneficial to bank on grounds of danger of confusion of issues and misleading jury where belief in benefit to bank was not a defense to misapplication of funds]; United States v. Johnson, 558 F.2d 744, 746-47 (5th Cir. 1977), cert. denied, 434 U.S. 1065 [excluding evidence of purported overpayment of taxes in fraudulent tax return prosecution on grounds of confusion of issues and improper appeal to emotions of jury].

In addition, although the Ninth Circuit has long recognized that juries have the power to acquit a defendant regardless of the evidence of his guilt, (see, United States v. Simpson, 460 F.2d 515, 518-19 (9th Cir. 1972)), it has never recognized a right held by a defendant to seek such a verdict. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1991). Thus, because a defendant has no right to seek nullification, he has no right to present evidence relevant only to such a defense. See, Zal v. Steppe, 968 F.2d 924, 930 (9th Cir.), Trott, J., concurring, cert. denied, 113 S.Ct. 656 (1992).

Such evidence includes any reference to the potential penalties which the defendant faces as a result of conviction. It is inappropriate for the jury to consider, or even be informed of the consequences of their verdict. U.S. v. Frank, 956 F.2d 872, 879 (9th Cir.

1991)  The defendant may attempt to introduce evidence or make argument concerning the potential penalties he faces in this case, specifically the penalties stemming from Count 1.  This should be excluded as irrelevant to the jury's mission here - to be the finders of fact.  The Government requests a motion in limine instructing the defense to refrain from any mention of the penalties resulting from any of the charges.

### C. <u>Admissible Evidence</u>

The discovery of the methamphetamine in the defendant's truck was based on a consent to search his vehicle given by the defendant.  It is essential to establish the proper intentions of the law enforcement officers who searched the defendant's vehicle.  Therefore, the government does intend to establish the fact that the officers acted lawfully when they searched the defendant's vehicle on November 20, 2005.

//

//

//

//

The Supreme Court has recognized the Government's need to present a reasonable picture of the events to the jury:

> Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.

Old Chief v. United States, 519 U.S. 172, 188 (1997).

RESPECTFULLY SUBMITTED this 8th day of September 2008, at Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

 s/Kelly Cavanaugh
KELLY CAVANAUGH
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: kelly.cavanaugh@usdoj.gov

I hereby certify that on September 8, 2008,
a copy of the foregoing GOVERNMENT'S
TRIAL MEMORANDUM AND MOTIONS
IN LIMINE was served electronically on:

Michael Dieni, attorney for Sean Turvin
Lance Wells, attorney for Corina Cunningham

s/ Kelly Cavanaugh
Office of the U.S. Attorney